**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

JOHN DOE CORPORATION,

            Plaintiff,

    v.

PUBLIC COMPANY ACCOUNTING
OVERSIGHT BOARD,

            Defendant,

UNITED STATES OF AMERICA,

            Defendant-Intervenor.

Case No. 4:24-cv-1103

**THE UNITED STATES OF AMERICA'S MEMORANDUM OF LAW**
**IN DEFENSE OF THE CHALLENGED PROVISIONS**
**OF THE SARBANES-OXLEY ACT**

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

BACKGROUND ...........................................................................................................................1

      A.     The Sarbanes-Oxley Act and the Board............................................................1

      B.     The Board's Authority to Conduct Investigations ..........................................2

      C.     Plaintiff's Complaint .........................................................................................3

ARGUMENT...................................................................................................................................4

I.     THE SARBANES-OXLEY ACT DOES NOT VIOLATE THE PUBLIC-
NONDELEGATION DOCTRINE ................................................................................4

II.    THE SARBANES-OXLEY ACT DOES NOT VIOLATE THE PRIVATE-
NONDELEGATION DOCTRINE ................................................................................8

      A.     The Board Is a Governmental Entity................................................................8

      B.     The Board Functions Subordinately to the SEC .............................................9

CONCLUSION.............................................................................................................................14

## TABLE OF AUTHORITIES

**CASES**

*A.L.A. Schechter Poultry Corp. v. United States,*
295 U.S. 495 (1935) ...............................................................................................5

*Am. Power & Light Co. v. SEC,*
329 U.S. 90 (1946) ............................................................................................ 5, 6

*Big Time Vapes, Inc. v. FDA,*
963 F.3d 436 (5th Cir. 2020) ................................................................................5

*Boerschig v. Trans-Pecos Pipeline, LLC,*
872 F.3d 701 (5th Cir. 2017) ............................................................................ 8, 9

*Carter v. Carter Coal Co.,*
298 U.S. 238 (1936) .............................................................................................10

*Consumers' Rsch. v. FCC,*
No. 22-60008, 2024 WL 3517592 (5th Cir. July 24, 2024) ............................. 8, 13

*Eubank v. City of Richmond,*
226 U.S. 137 (1912) ........................................................................................... 9, 10

*Dep't of Transp. v. Ass'n of Am. R.Rs.,*
575 U.S. 43 (2015) .................................................................................................9

*Fahey v. Mallonee,*
332 U.S. 245 (1947) ...............................................................................................6

*Fed. Power Comm'n v. Hope Nat. Gas Co.,*
320 U.S. 591 (1944) ...............................................................................................6

*First Jersey Sec., Inc. v. Bergen,*
605 F.2d 690 (3d Cir. 1979) ................................................................................12

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
561 U.S. 477 (2010) ........................................................................................*passim*

*Gundy v. United States,*
588 U.S. 128 (2019) .......................................................................................... 5, 7

*J.W. Hampton, Jr. & Co. v. United States,*
276 U.S. 394 (1928) ...............................................................................................5

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022) .................................................................................................7

*Lichter v. United States,*
    334 U.S. 742 (1948) ...............................................................................................................6

*Loving v. United States,*
    517 U.S. 748 (1996) ...............................................................................................................6

*Mistretta v. United States,*
    488 U.S. 361 (1989) ........................................................................................................ 5, 6

*Nat'l Broad. Co. v. United States,*
    319 U.S. 190 (1943) ...............................................................................................................6

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black,*
    53 F.4th 869 (5th Cir. 2022) .............................................................................................12

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black,*
    No. 23-10520, 2024 WL 3311366 (5th Cir. July 5, 2024) .................................... 12, 13

*Oklahoma v. United States,*
    62 F.4th 221 (6th Cir. 2023) ...................................................................................... 11, 12

*Pan. Refin. Co. v. Ryan,*
    293 U.S. 388 (1935) ...............................................................................................................5

*R.H. Johnson & Co. v. SEC,*
    198 F.2d 690 (2d Cir. 1952) ..............................................................................................12

*Sorrell v. SEC,*
    679 F.2d 1323 (9th Cir. 1982) ..........................................................................................12

*Sunshine Anthracite Coal Co. v. Adkins,*
    310 U.S. 381 (1940) ......................................................................... 9, 10, 11, 12, 13

*Thomas Cusack Co. v. City of Chicago,*
    242 U.S. 526 (1917) ......................................................................................................... 9, 10

*Todd & Co. v. SEC,*
    557 F.2d 1008 (3d Cir. 1977) ...........................................................................................12

*Touby v. United States,*
    500 U.S. 160 (1991) ...............................................................................................................6

*Vt. Yankee Nuclear Power v. Nat. Res. Def. Council,*
    435 U.S. 519 (1978) ...............................................................................................................7

iii

*Washington ex rel. Seattle Title Tr. Co. v. Roberge,*
278 U.S. 116 (1928) ............................................................................................ 9, 10

*Whitman v. Am. Trucking Ass'ns,*
531 U.S. 457 (2001) ............................................................................................ 5, 6

*Yakus v. United States,*
321 U.S. 414 (1944) ............................................................................................. 6

**STATUTES**

15 U.S.C. § 78s ............................................................................................ 2, 11, 12

15 U.S.C. § 7202 ................................................................................................... 11

15 U.S.C. § 7211 ............................................................................................... 1, 4

15 U.S.C. § 7213 ..................................................................................................... 2

15 U.S.C. § 7214 ..................................................................................................... 2

15 U.S.C. § 7215 ..................................................................................................... 2

15 U.S.C. § 7215 ........................................................................... 2, 3, 4, 6, 7, 11

15 U.S.C. § 7217 .......................................................................................... 2, 11, 13

15 U.S.C. § 7219 ............................................................................................. 2, 11

28 U.S.C. § 2403 ..................................................................................................... 4

**RULES**

Fed. R. Civ. P. 5.1 ................................................................................................. 4

**INTRODUCTION**

The United States respectfully submits this memorandum of law in support of the constitutionality of the Sarbanes-Oxley Act of 2002, which established the Public Company Accounting Oversight Board.  Plaintiff argues that the Act is unconstitutional under both the public and private nondelegation doctrines, but neither argument has merit.  The Act does not violate the public-nondelegation doctrine because Congress has provided an intelligible principle to guide the Board's discretion in issuing rules and procedures.  And the Act does not violate the private-nondelegation doctrine for two independent reasons.  First, the doctrine does not apply to the Board because it is a governmental (as opposed to a private) entity.  Second, even if the Board were considered a private entity, its structure is constitutional because the Board functions subordinately to the Securities and Exchange Commission.  Accordingly, if the Court reaches the merits, it should hold that the challenged provisions of the Sarbanes-Oxley Act are constitutional.

**BACKGROUND**

**A.      The Sarbanes-Oxley Act and the Board**

In the Sarbanes-Oxley Act of 2002, Congress created the Public Company Accounting Oversight Board to oversee the accounting industry.  The Board consists of five members, appointed and removable by the Securities and Exchange Commission.  15 U.S.C. § 7211(e).  The Board was modeled on self-regulating organizations in the securities industry that operate under the SEC's oversight, such as the Financial Industry Regulatory Authority (FINRA) and its predecessor, the National Association of Securities Dealers (NASD).  Like those organizations, the Board is designated by statute as a nonprofit corporation.  *See* 15 U.S.C. § 7211.

"Unlike the self-regulatory organizations, however, the Board is a Government-created, Government-appointed entity," that is "part of the Government for constitutional purposes."  *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 485–86 (2010).  The Board's members are

"Officers of the United States," and "exercise significant authority pursuant to the laws of the United States." *Id.* at 486 (alterations and citations omitted). The Board "promulgates auditing and ethics standards, performs routine inspections of all accounting firms, demands documents and testimony, and initiates formal investigations and disciplinary proceedings." *Id.* at 485 (citing 15 U.S.C. §§ 7213–15).

The statute also "places the Board under the SEC's oversight." *Id.* at 486. The SEC approves the Board's budget, 15 U.S.C. § 7219(b), and maintains "oversight and enforcement authority over the Board," *id.* § 7217(a). All Board rules must be approved by the SEC, and do not go into effect until approved. 15 U.S.C. § 7217(b) (incorporating 15 U.S.C. §§ 78s(b)–(c)). Likewise, any disciplinary sanction that the Board imposes on an accountant must be reported to the SEC, and it is then subject to *de novo* SEC review. 15 U.S.C. § 7217(c) (incorporating 15 U.S.C. §§ 78s(d)–(e)).

**B.     The Board's Authority to Conduct Investigations**

Section 105 of the Sarbanes-Oxley Act authorizes the Board to conduct investigations into accounting firms for potential violations of the Act or the Board's own rules. 15 U.S.C. § 7215(b). The Act directs the Board to "establish, by rule," and "subject to the requirements" of section 105(b), "fair procedures for the investigation and disciplining of registered public accounting firms and associated persons of such firms." 15 U.S.C. § 7215(a).

The statute then sets forth various requirements that govern the Board's procedures for investigations and disciplinary proceedings. It provides that the Board may require testimony or the production of documents from accounting firms or associated persons with respect to any matter "that the Board considers relevant or material to an investigation." *Id.* § 7215(b)(2). It provides for sanctions that may be imposed on accounting firms or associated persons for refusing to testify, produce documents, or otherwise cooperate with a Board investigation. *Id.* § 7215(b)(3). It provides that all documents prepared or received by the Board in an investigation shall be treated as

2

confidential. *Id.* § 7215(b)(5). It describes the notice that must be provided to accounting firms against whom the Board initiates disciplinary proceedings. *Id.* § 7215(c)(1). And it requires that such disciplinary proceedings "shall not be public, unless otherwise ordered by the Board for good cause shown, with the consent of the parties to such hearing." *Id.* § 7215(c)(2).

Consistent with these requirements, the Board has promulgated rules implementing Section 105(a). Those rules include authorizing the Board to issue "accounting board demands" for testimony and documents to accounting firms. *See, e.g.*, Board Rules 5102, 5103. Failure to comply with such a demand can result in the Board instituting disciplinary proceedings against the firm for failing to cooperate with a Board investigation. *See id.* Rule 5110. If the Board finds that a firm has failed to comply with a demand, it may impose various sanctions against the firm, including suspending its registration or imposing civil monetary penalties. *Id.* Rule 5300(b).

## C.    Plaintiff's Complaint

Plaintiff is a public accounting firm that has been the subject of a Board investigation since October 2021. Compl. ¶ 37. Plaintiff alleges that, during that time, the Board's Division of Enforcement and Investigations has issued six accounting board demands to Plaintiff. *Id.* The Board issued the most recent demand on March 14, 2024. *Id.* ¶ 43. Plaintiff alleges that the demand "compel[ed] Plaintiff to produce . . . documents within two weeks" under threat of punishment for noncooperation. *Id.*

On March 27, 2024, Plaintiff filed a four-count complaint against the Board. Count One asserts that Section 105 of the Sarbanes-Oxley Act is unconstitutional because it violates the nondelegation doctrine. Count Two asserts that the Act is unconstitutional because it authorizes the Board, which Plaintiff alleges is a "private entit[y]," to exercise "unsupervised executive power," in violation of the so-called private nondelegation doctrine. Count Three asserts that the Board's

3

procedures relating to accounting board demands violate the Due Process Clause, and Count Four asserts that those procedures violate Section 105(a) of the Sarbanes-Oxley Act.

The Board, represented by private counsel,[1] has moved to dismiss the complaint on grounds including lack of personal jurisdiction, improper venue, and failure to state a claim. On July 12, 2024, the United States intervened in this action to defend the constitutionality of the Sarbanes-Oxley Act. ECF No. 28; *see* 28 U.S.C. § 2403(a) (authorizing the United States to intervene "[i]n any action . . . wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question"); Fed. R. Civ. P. 5.1(c) (similar). The United States now submits this memorandum of law in defense of the challenged statutory provisions.

## ARGUMENT

The Court should begin by considering the Board's threshold arguments, including on personal jurisdiction and venue, which may obviate the need to reach the merits. If the Court does reach the merits, however, it should conclude that the challenged provisions of the Sarbanes-Oxley Act are constitutional.

## I. THE SARBANES-OXLEY ACT DOES NOT VIOLATE THE PUBLIC-NONDELEGATION DOCTRINE

Section 105(a) of the Sarbanes-Oxley Act authorizes the Board to "establish, by rule, subject to the requirements of this section, fair procedures for the investigation and disciplining of registered public accounting firms and associated persons of such firms." 15 U.S.C. § 7215(a). Plaintiff contends that this provision is unconstitutional under the public nondelegation doctrine. *See* Compl. ¶¶ 45–49. This argument lacks merit.

"Delegations are constitutional so long as Congress 'lays down by legislative act an intelligible principle to which the person or body authorized to exercise the authority is directed to

---

[1] The statute authorizes the Board to "sue and be sued, complain and defend, in its corporate name and through its own counsel, with the approval of the Commission." 15 U.S.C. § 7211(f)(1).

conform."' *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 441–42 (5th Cir. 2020) (alterations omitted) (quoting *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928)).  It is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of th[e] delegated authority.'" *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946).

"Those standards . . . are not demanding." *Gundy v. United States*, 588 U.S. 128, 146 (2019) (plurality op.).  Although Congress has delegated authority since "the beginning of the government," the Supreme Court "has found only two delegations to be unconstitutional." *Big Time Vapes*, 963 F.3d at 442, 446 (citation omitted).  One "provided literally no guidance for the exercise of discretion," and the other "conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001) (quoting *Pan. Refin. Co. v. Ryan*, 293 U.S. 388 (1935), and citing *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)).  By contrast, in the almost 90 years since those two decisions—both from 1935, and both about the same statute—the Supreme Court has consistently upheld "Congress' ability to delegate power under broad standards," *Mistretta v. United States*, 488 U.S. 361, 373 (1989), and "ha[s] 'almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law,'" *Am. Trucking*, 531 U.S. at 474–75 (quoting *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting)).

Applying those principles, the Supreme Court has upheld nearly every delegation it has confronted, including delegations:

- to the President to set and adjust tariffs as needed to "equalize the . . . differences in costs of production" between foreign and domestic goods, *J.W. Hampton*, 276 U.S. at 401 (citation omitted); *see id.* at 407–11;

5

- to the Federal Communication Commission to regulate broadcast licensing as "public interest, convenience, or necessity" requires, *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 225–26 (1943);

- to the Federal Power Commission to determine "just and reasonable" rates for wholesale sales of natural gas, *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 600 (1944);

- to the Price Administrator to fix commodity prices that would be "fair and equitable" and would "effectuate the purposes of th[e] [Emergency Price Control Act of 1942]," the violation of which resulted in criminal sanctions, *Yakus v. United States*, 321 U.S. 414, 420 (1944) (citation omitted); *see id.* at 425–27;

- to the SEC to prevent unfair or inequitable distribution of voting power among security holders, *Am. Power & Light*, 329 U.S. at 104–05;

- to the Secretary of War to determine and recover "excessive profits" from military contractors, *Lichter v. United States*, 334 U.S. 742, 785–86 (1948) (citation omitted);

- to the Federal Home Loan Administration to make "rules and regulations . . . for the reorganization, consolidation, merger, or liquidation of [savings-and-loan] associations," *Fahey v. Mallonee*, 332 U.S. 245, 247, 249–50 (1947) (citation omitted);

- to the Sentencing Commission to promulgate (then-binding) sentencing guidelines establishing the permissible sentences for federal crimes, *Mistretta*, 488 U.S. at 374–77;

- to the Attorney General to designate controlled substances on a temporary basis, resulting in criminal penalties for unauthorized manufacture, possession, or distribution of such substances, *Touby v. United States*, 500 U.S. 160, 165–67 (1991);

- to the President to identify aggravating factors used to impose the death penalty in courts martial, *Loving v. United States*, 517 U.S. 748, 771–74 (1996); and

- to the Environmental Protection Agency to set nationwide air-quality standards limiting pollution to the level required "to protect the public health." *Am. Trucking*, 531 U.S. at 472 (quoting 42 U.S.C. § 7409(b)(1)); *see id.* at 472–76.

Section 105(a) fits comfortably within this precedent.  The Sarbanes-Oxley Act expressly vests the Board with authority to establish procedures for the investigation and disciplining of accounting firms.  15 U.S.C. § 7215(a).  Congress also "clearly delineate[d] the general policy," *Mistretta*, 488 U.S. at 372–73, that the Board establish procedures that are "fair" and consistent with the "requirements of this section [*i.e.*, Section 105]," 15 U.S.C. § 7215(a).  The statute then goes on to identify specific requirements that further cabin the Board's authority.  *See id.* §§ 7215(b)–(c).

6

Plaintiff nonetheless contends that section 105(a) is unconstitutional because it "d[oes] not define 'fair procedures' and provide[s] no intelligible principle to guide or constrain the Board in promulgating the rules." Compl. ¶ 28. As an initial matter, the requirement that the Board establish "fair" procedures is itself sufficient under the longstanding nondelegation precedents noted above. *See, e.g., Gundy*, 588 U.S. at 146 (discussing cases in which the Court has upheld statutes authorizing agencies to set "fair and equitable prices," to fix "just and reasonable" rates, and to regulate "in the public interest"). But Plaintiff also ignores that—beyond simply requiring "fair procedures"— section 105(a) conveys additional details concerning the procedures the Board should use in its investigations and disciplinary processes. Section 105(b)(2) addresses requests or demands for testimony or documents. Section 105(b)(3) identifies potential sanctions for failure to cooperate with Board investigations. And Section 7215(b)(5) requires that documents received or prepared by the Board during an investigation, and the Board's deliberations themselves, should be treated as "confidential and privileged." Such provisions are far more detailed than delegations that the Supreme Court has found to be constitutionally sufficient. *See Gundy*, 588 U.S. at 146.

Notably, Plaintiff does *not* contend that Congress has failed to define with sufficient specificity the type of conduct that the Board may investigate or punish, or the range of sanctions it may impose. Rather, Plaintiff contends only that Congress unlawfully delegated authority as to the *procedures* the Board may use in determining whether violations have occurred and which of the permissible sanctions are appropriate. But, as the Board points out, the Supreme Court has long held that agencies are best positioned to develop procedures to govern their investigations. *See* Def.'s Mot. to Dismiss 20, ECF No. 17 (citing *Vt. Yankee Nuclear Power v. Nat. Res. Def. Council*, 435 U.S. 519, 549 (1978)).

The Fifth Circuit's decision in *Jarkesy v. SEC*, 34 F.4th 446, 461 (5th Cir. 2022), is of no help to Plaintiff. There, the court held that Congress had offered "no guidance whatsoever" to guide the

7

SEC's discretion as to whether a defendant should be prosecuted in federal court. *Id.* at 462. Here, as explained, Congress required the Board to establish fair procedures that are consistent with requirements set forth in Section 105.

The Fifth Circuit's recent decision in *Consumers' Rsch. v. FCC*, No. 22-60008, 2024 WL 3517592 (5th Cir. July 24, 2024), is similarly inapposite. There, the court held that the "unprecedented" "combination of Congress's . . . delegation to the FCC and FCC's unauthorized subdelegation to [a private entity] violate[d] the Legislative Vesting Clause in Article I, § 1." *Id.* at *16, *25. The court found it problematic that "[u]nlike delegations implicating special agency expertise," Congress had delegated to the FCC the "core legislative power" of taxation. *Id.* at *9, *16. Here, by contrast, there is no "double-layered delegation" at issue. *Id.* at *26. And Congress did not delegate to the Board a "core legislative power" but rather simply the power to establish the procedures governing its own investigations, which, as noted, implicates the agency's expertise.

Accordingly, Plaintiff's public-nondelegation challenge fails as a matter of law.

## II.　THE SARBANES-OXLEY ACT DOES NOT VIOLATE THE PRIVATE-NONDELEGATION DOCTRINE

Plaintiff's second claim is that the Board is a "private entit[y]" that is "exercis[ing] core executive law enforcement power against Plaintiff without meaningful direction, oversight, and supervision by principal officers of the Executive Branch." Compl. ¶¶ 51, 53. Although Plaintiff does not use the term, this claim appears to invoke the so-called "private-nondelegation doctrine." *See Boerschig v. Trans-Pecos Pipeline, LLC*, 872 F.3d 701, 707 (5th Cir. 2017). But Plaintiff cannot prevail under that doctrine for two independent reasons: (i) the Board is a governmental entity for purposes of the doctrine and (ii) the Board functions subordinately to the SEC.

8

### A.     The Board Is a Governmental Entity

Plaintiff's private-nondelegation claim is premised on its allegation that the Board is a "private," as opposed to a "governmental," entity.  Compl. ¶ 51.  But that premise is flawed; as the Supreme Court has observed, the Board is a "Government-created, Government-appointed entity," that is "part of the Government for constitutional purposes." *Free Enter. Fund*, 561 U.S. at 485–86.  Because the Board is a governmental entity, the private-nondelegation doctrine does not apply to the Board.  *See Dep't of Transp. v. Ass'n of Am. R.Rs. ("Amtrak")*, 575 U.S. 43, 50–51, 55 (2015) (holding that doctrine did not apply to Amtrak because it was a "governmental entity" for purposes of the doctrine, notwithstanding statute providing that Amtrak was "not a department, agency, or instrumentality of the United States Government").

### B.     The Board Functions Subordinately to the SEC

Plaintiff's private-nondelegation claim also fails because the Board "function[s] subordinately" to the SEC and thus would be constitutional even if the Board were considered a private entity. *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940).

Despite its name, "the private nondelegation doctrine is rooted" in "substantive due process," rather than the vesting clauses of the Constitution. *Boerschig*, 872 F.3d at 709; s*ee generally* Alexander S. Volokh, *The Shadow Debate over Private Nondelegation in* DOT v. Association of American Railroads, 2015 Cato Sup. Ct. Rev. 359 (2015).  Its earliest applications concerned ordinances that allowed homeowners to set zoning requirements for their neighborhoods. *Washington ex rel. Seattle Title Tr. Co. v. Roberge*, 278 U.S. 116, 120–22 (1928); *Thomas Cusack Co. v. City of Chicago*, 242 U.S. 526, 530 (1917); *Eubank v. City of Richmond*, 226 U.S. 137, 143–44 (1912).  Such ordinances, the Supreme Court explained, were generally unconstitutional because they "conferr[ed] the power on some property holders to virtually control and dispose of the property rights of others," without setting any standard to prevent the private property owners from making public policy "solely for their own

9

interest, or even capriciously." *Eubank*, 226 U.S. at 143–44. These ordinances were unlawful where they "gave to [the decision of private entities] the effect of law." *Thomas Cusack Co.*, 242 U.S. at 531. Where municipal officials were "bound by the decision" of entities who themselves were not "bound by any official duty," the "delegation of power so attempted [was] repugnant to the due process clause of the Fourteenth Amendment." *Roberge*, 278 U.S. at 122.

The Supreme Court applied that doctrine to the federal government in *Carter v. Carter Coal Co.*, 298 U.S. 238 (1936). The Court held unlawful a federal statute that allowed the producers of more than two-thirds of the coal in any given district to set wages and hours for all the producers in that district, unconstrained by any public agency review. *Id.* at 281–83. That "obnoxious" delegation "to private persons whose interests may be and often are adverse to the interests of others in the same business," the Court held, was "clearly arbitrary" and "clearly a denial of rights safeguarded by the due process clause of the Fifth Amendment." *Id.* at 311.

In the wake of *Carter Coal*, Congress enacted a new statute under which local boards consisting of private coal producers would be organized under the Bituminous Coal Code and would "operate as an aid to the [National Bituminous Coal] Commission but subject to its pervasive surveillance and authority." *Adkins*, 310 U.S. at 388. The new statute "specifie[d] in detail the methods of [the boards'] organization and operation, the scope of their functions, and the jurisdiction of the Commission over them." *Id.* The Coal Commission was "empowered to fix minimum prices . . . in accordance with stated standards" following a procedure in which the code boards would "propose minimum prices pursuant to prescribed statutory standards," which "may be approved, disapproved, or modified by the Commission." *Id.*

In reviewing this revised scheme in *Sunshine Anthracite Coal Co. v. Adkins*, the Supreme Court determined that the revised statutory standards for fixing coal prices were "a valid delegation of authority" to the Coal Commission because they "far exceed[ed] in specificity others which have

10

been sustained." *Id.* at 398.  Then, in addressing the plaintiff's private-nondelegation arguments, the Court held that no constitutional problem arose from involving private industry in the regulatory scheme because "members of the code function subordinately to the Commission." *Id.* at 399.  "It, not the code authorities, determines the prices.  And it has authority and surveillance over the activities of these authorities.  Since law-making is not entrusted to the industry, this statutory scheme is unquestionably valid." *Id.*

Under *Adkins*, Plaintiffs' claim fails, because the Board "function[s] subordinately" to the SEC, 310 U.S. at 399, which maintains "oversight and enforcement authority over the Board,"  15 U.S.C. § 7217(a).  The SEC exercises "[b]road power over Board functions," and "may, for example, approve the Board's budget, § 7219(b), issue binding regulations, §§ 7202(a), 7217(b)(5), relieve the Board of authority, § 7217(d)(1), amend Board sanctions, § 7217(c), or enforce Board rules on its own, §§ 7202(b)(1), (c)." *Free Enter. Fund*, 561 U.S. at 504.  The SEC must approve all of the Board's rules, and the SEC may abrogate, add to, and delete from those rules as it deems necessary.  15 U.S.C. §§ 7217(b)(3), (5) (incorporating 15 U.S.C. § 78s(c)).  Moreover, the Board must notify the SEC of any final disciplinary action it takes against an accounting firm, which is thereafter subject to *de novo* review by the SEC, acting *sua sponte* or in response to a petition from the aggrieved party.  *Id.* § 7217(c) (incorporating 15 U.S.C. § 78s(d)–(e)).  Any Board sanction is automatically stayed on the filing of an application for SEC review or the institution of proceedings by the SEC, unless and until the SEC orders that a stay should not continue.  *Id.* § 7215(e).  And Board members are removable by the SEC at will.  *Free Enter. Fund*, 561 U.S. at 509.

Courts have repeatedly held that similar arrangements between the SEC and the self-regulatory organizations on which the Board was based are constitutional.  *Oklahoma v. United States*, 62 F.4th 221, 229 (6th Cir. 2023) ("In case after case, the courts have upheld this arrangement, reasoning that the SEC's ultimate control over the rules and their enforcement makes SROs

permissible aides and advisors."). Indeed, every court of appeals to consider the question has agreed

that the similar structure between the SEC and FINRA (or its predecessor, NASD) is constitutional

because the statute gives the SEC the power to approve or disapprove of rules and conduct *de novo*

review of disciplinary sanctions. *R.H. Johnson & Co. v. SEC*, 198 F.2d 690, 695 (2d Cir. 1952); *see*

*Todd & Co. v. SEC*, 557 F.2d 1008, 1012–13 (3d Cir. 1977); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d

690, 697 (3d Cir. 1979); *Sorrell v. SEC*, 679 F.2d 1323, 1325–26 (9th Cir. 1982).

Three recent Fifth Circuit decisions underscore the propriety of the delegation at issue here.

First, in *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869 (5th Cir. 2022) ("*NHBPA*

*I*"), the Fifth Circuit held that that the version of the Horseracing Integrity and Safety Act (HISA)

then in effect was an unconstitutional delegation to the Horseracing Integrity and Safety Authority, a

private entity. In doing so, however, the panel explicitly contrasted the challenged statutory

provisions with those that govern the SEC-FINRA model on which the Board is based. *See id.* at

887. The Fifth Circuit cited as a "key distinction" the fact that "[u]nlike HISA, the Maloney Act

empowers the SEC to 'abrogate, add to, and delete from' FINRA rules 'as the [SEC] deems

necessary or appropriate.'" *Id.* (quoting 15 U.S.C. § 78s(c)). The court observed that "although

FINRA plays an important role in formulating securities industry rules, its role is ultimately 'in aid

of' the SEC, which has the final word on the substance of the rules." *Id.* (citing *Adkins*, 310 U.S. at

388); *see also Oklahoma*, 62 F.4th at 232 (distinguishing the previous version of HISA on this basis,

reasoning that "the SEC's modification power . . . explains why every court of appeals to address the

validity of such delegations under the Maloney Act . . . has upheld them").

The Fifth Circuit then again contrasted the SEC-FINRA model in *Nat'l Horsemen's Benevolent*

*& Protective Ass'n v. Black*, No. 23-10520, 2024 WL 3311366 (5th Cir. July 5, 2024) ("*NHBPA II*"),

which considered an amended version of HISA. Although the court held that the amended law

violated the private-nondelegation doctrine, it expressly distinguished "the role of self-regulatory

12

organizations . . . which assist the SEC in enforcing securities laws." *Id.* at \*12.  Specifically, the court distinguished the SEC-FINRA relationship because of the SEC's "potent oversight power over [FINRA's] enforcement such as the power to enforce [FINRA's rules] itself, deregister [FINRA] as the enforcing entity, [and] remove its directors." *Id.*  The SEC possesses the same oversight power over the Board.  *See* 15 U.S.C. § 78u(a)(1) (power to investigate violations of Board rules); *id.* § 7217(d)(1) (power to relieve Board of any responsibility of enforcement); *Free Enter. Fund*, 561 U.S. at 509 (power to remove Board members at will).

Finally, the Fifth Circuit once again contrasted the SEC-NASD model in *Consumers' Research v. FCC*, recognizing that courts have held the model to be constitutional.  2024 WL 3517592, at \*19. While the court held that the "combination of Congress's broad delegation to FCC and FCC's subdelegation to private entities" was unconstitutional, nothing in the opinion calls into question the constitutionality of the Board.  *Id.* at \*8.  The court found it problematic that a private entity's "projections of demand and administrative expenses" could "take legal effect without formal FCC approval" and that the FCC did not "independently" review those amounts.  *Id.* at \*3, 19. Here, by contrast, all Board rules must be approved by the SEC, and any disciplinary sanction is subject to independent, *de novo* review.  15 U.S.C. § 7217(b)–(c).

In sum, because the Board "function[s] subordinately" to the SEC, *Adkins*, 310 U.S. at 399, the Board would not violate the private-nondelegation doctrine even if it were considered a private entity.

## CONCLUSION

The Court should first consider the threshold arguments, including personal jurisdiction and venue, raised by the Board.  If the Court does reach the merits, however, it should hold that the challenged provisions of the Sarbanes-Oxley Act are constitutional.

Dated:  July 26, 2024                Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director

/s/ John Robinson
JOHN ROBINSON (D.C. Bar No. 1044072)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
(202) 616-8489
john.j.robinson@usdoj.gov

*Counsel for Defendant*

14